UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA NAZARIO VARGAS, | : | CIVIL NO: 1:23-CV-00959 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| *Commissioner of the Social Security* | : | |
| *Administration*, | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

**I. Introduction.**

   This is a social security action brought under 42 U.S.C. § 405(g). Plaintiff Brenda Nazario Vargas ("Nazario Vargas") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income under Title XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons

---

[1] Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 5-1 to 5-6, 6, 7.*[2] On October 22, 2020, Nazario Vargas protectively filed[3] an application[4] for supplemental security income alleging that she became disabled on September 6, 2018. *Admin. Tr.* at 21. After the Commissioner denied her claim both at the initial level of administrative review and on reconsideration, Nazario Vargas requested an administrative hearing. *Id.* Accordingly, Administrative Law Judge ("ALJ") Lawrence J. Neary held a hearing via telephone on December 14, 2021, at which Nazario Vargas, represented by counsel, testified. *Id.*

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Nazario Vargas's claims.

[3] "Protective filing is a term [referring to] the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.* Here, the ALJ identifies October 22, 2020, as the date that Nazario Vargas protectively filed her application. *Admin. Tr.* at 21.

[4] Apropos of nothing, the Commissioner makes a point to inform the Court that this was her sixth application for supplemental security income. This is irrelevant to our analysis and will be disregarded.

The ALJ determined that Nazario Vargas had not been disabled from October 22, 2020 (the alleged onset date), through May 4, 2022 (the date of the decision). *Id.* at 32. And so, he denied Nazario Vargas benefits. *Id.* Nazario Vargas appealed the ALJ's decision to the Appeals Council, which denied her request for review on May 18, 2023. *Id.* at 1–3. This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On June 10, 2023, Nazario Vargas, through counsel, began this action by filing a complaint claiming that the Commissioner's decision "was not supported by substantial evidence in the administrative record" and the ALJ "erred and abused his discretion" in a number of ways. *Doc. 1* ¶¶ 14–32. She requests that the Court reverse and set aside the Commissioner's decision.

The Commissioner filed an answer and a certified transcript of the administrative proceedings. *Docs. 4, 5, 6, 7.* The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). *Doc. 9.* The parties filed briefs, and this matter is ripe for decision. *Docs. 13, 18.*

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by

3

the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Nazario Vargas is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant generally must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).  Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).  Supplemental Security Income "is a federal income supplement

program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On May 4, 2022, the ALJ denied Nazario Vargas's claims for benefits. *Admin. Tr.* at 21–32.  At step one of the sequential-evaluation process, the ALJ

7

found that Nazario Vargas had not engaged in substantial gainful activity since October 22, 2020, her alleged onset date. *Id.* at 23.

At step two of the sequential-evaluation process, the ALJ found that Nazario Vargas had the following severe impairments: "major depressive disorder, panic disorder without agoraphobia, attention deficit and hyperactivity disorder, migraine headaches, coronary artery disease, degenerative disc disease of the lumbar spine, headaches, coronary artery disease, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, asthma, fibromyalgia, and irritable bowel syndrome." *Id.* The ALJ also found that Nazario Vargas "also has endometriosis, gastrointestinal reflux disease, . . . heart palpitations[,]" and obesity, but that these impairments are not severe. *Id.* at 23–24.

At step three of the sequential-evaluation process, the ALJ found that Nazario Vargas did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 24–26. The ALJ specifically examined listing 3.02 for chronic respiratory disorders, listing 1.16 for lumbar spinal stenosis, listing 1.18 for an abnormality of a major joint in any extremity, listing 11.02 for epilepsy, listing 4.05 for recurrent arrhythmias, and listings 12.04 and 12.06 related to mental impairments. *Id.* at 24–25.

The ALJ then determined that Nazario Vargas has the RFC to perform light work[5] with some limitations. *Id.* at 26–31.  Specifically, the ALJ found that Nazario Vargas "can stand and/or walk for a total of four (4) hours in an eight (8) hours" and can "engage in occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling[.]" *Id.* at 26.  And the ALJ found that Nazario Vargas "can never engage in climbing of ladders, ropes, ropes, or scaffolds," nor should she ever be exposed to "extreme heat and cold, wetness, humidity, loud noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights and moving machinery[.]" *Id.*  Furthermore, Nazario Vargas "is limited to simple, routine tasks, with only occasional interaction with the public and supervisors." *Id.*

In making this RFC assessment, the ALJ reviewed Nazario Vargas's testimony, daily activity, and treatment records and related medical findings and notes. *Id.* at 27–29.  The ALJ also considered medical opinions from four state

---

[5] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

agency consultants—(1) Dr. Peter J. Garito, Ph.D. ("Dr. Garito"); (2) Dr. Lisa Marie Cannon, Psy.D. ("Dr. Cannon"); (3) Dr. Gaye Christina Gustitus, D.O. ("Dr. Gustitus"); and (4) Dr. Karel Ann Keiter, D.O. ("Dr. Keiter")—whose opinions he found persuasive. *Id.* at 29–30.  The ALJ also found the opinion of Dr. Ahmed Kneifati, M.D. ("Dr. Kneifati"), an independent consultative examiner, to be persuasive. *Id.* at 30.  The ALJ also considered, but found not persuasive, the opinion of Andres Ramirez, Licensed Marriage and Family Therapist ("Ramirez"). *Id.*

At step four of the sequential-evaluation process, the ALJ found that Nazario Vargas had past relevant work—namely, as a hand packager. *Id.* at 31.  But the ALJ found that Nazario Vargas is unable to perform that past relevant work. *Id.*

At step five of the sequential-evaluation process, the ALJ noted that Nazario Vargas was 42 years old.  Then, considering Nazario Vargas's age, education, work experience, and RFC, the ALJ found that Nazario Vargas could perform jobs that exist in significant numbers in the national economy. *Id.* at 31–32.  Specifically, the ALJ found, based on the testimony of a vocational expert, that Nazario Vargas could perform the requirements of postage machine operator, lemon sorter, and routing clerk. *id.* at 32.

In sum, the ALJ concluded that Nazario Vargas was not disabled. *Id*. at 32.  Thus, he denied her claim for benefits. *Id*.

## V. Discussion.

The brief filed by Nazario Vargas is unfocused and touches on many issues. *See doc. 13* (passim). And we must note that Nazario Vargas's brief incorrectly asserts that the ALJ denied her claims at step four. *See doc. 13* at 7. Nazario Vargas also raises certain arguments only in passing, and without citations to the record or caselaw. *See id.* We will neither develop legal arguments on a party's behalf based on passing mention of error, nor will we dig through the voluminous record to develop such arguments. *See Loewen v. Berryhill*, 707 Fed. Appx. 907, 908 (9th Cir. 2017) (memorandum opinion) (citing *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court does not need to address arguments that were made without specificity); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (the court cannot construct arguments for an appellant, and it will only examine issues specifically and distinctly argued in an appellant's initial brief)); *see also U.S. v. Dunkel*, 927 F.2d 944 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *see also U.S. v. Winkelman*, 548 F. Supp. 2d 142, 150 (M.D. Pa. Mar. 10, 2008) ("We are not pigs searching for truffles and are unwilling to search through the massive record that has been developed in this case to find evidence of these alleged violations."). We thus discuss these arguments no further.

Insofar as Nazario Vargas does develop arguments, she raises three issues on appeal: (1) Did the ALJ fail to consider Nazario Vargas's severe impairments in crafting the RFC?  (2) Did the ALJ fail to consider Nazario Vargas's non-severe impairments in crafting the RFC? and (3) Did the ALJ fail to afford proper weight to the opinion of Nazario Vargas's treating provider? *Doc. 13* at 1–2.  Because claims one and two both deal with the RFC, we will address those claims together. But because how the ALJ assessed the opinion evidence informed his RFC determination, we first address Nazario Vargas's claim regarding the opinion evidence. Ultimately, for the reasons discussed below, we conclude that Nazario Vargas's claims are without merit.

### A.  The ALJ did not err in his consideration of the opinion evidence.

On March 27, 2017, the regulations regarding opinion evidence shifted. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279 (M.D. Pa. 2022).  Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id.* at 280.  But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id.*  Further, under the old

regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.967(c). Under the new regulations, however, the ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Nazario Vargas appears to conflate the new regulations with the old. She describes the ALJ as "assign[ing] persuasive *weight* to the opinions of" Dr. Garito, Dr. Cannon, Dr. Gustitus, Dr. Keiter (collectively "the State Agency Consultants"), and Dr. Kneifati. *Doc. 13* at 29–30 (emphasis added). We note the above paradigm shift in regulations so it is abundantly clear what standard ALJs are held to presently, and what standard we will apply hereafter.

Nazario Vargas includes many arguments within the larger umbrella of the ALJ's consideration of opinion evidence. Specifically, she argues that the limitations Ramirez recommended as her treatment provider should have been included in the RFC. *Id.* at 31. But she does not address the fact that the ALJ found Ramirez's opinion to be unpersuasive. *See Admin. Tr.* at 30. Nazario Vargas appears to ask us to reevaluate the ALJ's decision relating to Ramirez's opinion—but our review is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). The ALJ has met this low threshold. Citing the record, the ALJ explains that Ramirez's finding of "extreme limitations in understanding, remembering, or applying

13

information, interacting with others, sustaining concentration, persistence, or pace, and adapting or managing oneself" is "overly limiting and is not supported by objective findings[.]" *Admin. Tr.* at 30. Moreover, the ALJ found that the opinion is inconsistent with the claimant's report of her daily activities. *Id.* The ALJ has thus also met his obligation to provide "a clear and satisfactory explication of the basis on which" his decision rests. *See Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Nazario Vargas also points out that the State Agency Consultants' opinions were rendered "approximately one year prior to the hearing in this matter, and despite the fact that they never examined Claimant and . . . without many of the medical records submitted in this matter." *Admin. Tr.* at 30–31. Nazario Vargas appears to rely on bold text to carry much of this argument. Regardless, the opinions of state agency consultants "merit significant consideration." *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011). And "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Id.* Further, the mere fact that some additional medical evidence is received after the agency consultant's report does not necessarily mean that the ALJ may not rely on the agency consultant's opinions. *Id.* Here, the ALJ appropriately considered the opinions of

the state agency consultants, and he explained why he found their opinions persuasive. *See Admin. Tr.* at 29–30.

Nazario Vargas finally argues that the ALJ erred by failing to include Dr. Kneifati's suggested limitations in the RFC, despite finding Dr. Kneifati's opinion persuasive. *Doc. 13* at 29–30. "However, contrary to [this] argument, simply finding an opinion persuasive does not mean that the ALJ must accept the persuasive medical opinion wholesale." *Ortiz-Rivera v. Kijakazi*, NO. 3:21-CV-021343, 2023 WL 25353, *8 (M.D. Pa. Jan. 3, 2023) (citing *Wilkinson v. Commissioner of Social Security*, 558 Fed. App'x 254, 256 (3d Cir. 2014)). Just as an ALJ is "'entitled generally to credit parts of an opinion without crediting the entire opinion[,]'" *Mercado v. Kijakazi*, 629 F.Supp.3d 260, 281 (M.D. Pa. 2022) (quoting *Durden v. Colvin*, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016)), an ALJ may also evaluate many medical opinions and then "formulate an RFC based on different parts from the different medical opinions[,]" *id.* (quoting *Durden*, 191 F.Supp.3d at 455). In the end, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ thus did not err in crafting an RFC that accounts for the medical evidence, despite not hewing closely to any one medical expert's recommendation.

### B. The ALJ did not err by failing to impose additional limitations in the RFC.

The sections of Nazario Vargas's brief that argue error in the RFC are emblematic of the problems that plague the entirety of the brief as discussed above. Nazario Vargas asserts error in passing and always in a conclusory manner, without citing case law or, in many cases, the record. *See doc. 13* at 13–25. Nazario Vargas does, however, make meager attempts at developing some arguments in this case—albeit with a dearth of case law—such that we will discuss each of these arguments further.

According to Nazario Vargas, "[t]he ALJ fails to adequately explain how Claimant could perform any work on a sustained basis . . . while continuing to deal with the . . . severe impairments" the ALJ found in step two. *Doc. 13* at 15. Specifically, she points to various ailments that, according to Nazario Vargas, the ALJ either failed to reference or did not "properly consider[.]" *Id.* at 16. She argues that the ALJ failed to (1) reference her right arm/shoulder pain; (2) acknowledge an "abnormal EMG of her lower extremities"; (3) reference the severe degenerative changes at L5-S1; and (4) account for Nazario-Vargas's "left foot pain and related difficulty walking." *Id.* at 16, 24. But Nazario Vargas fails to cite record evidence of any shoulder or arm pain. *Id.* (citing *Admin. Tr.* at 108 (setting forth a doctor's proposed RFC limitations without reference to any arm or shoulder pain)). And as to the condition of her lower extremities and spine, the

16

ALJ thoroughly discussed her fibromyalgia and degenerative disc disease of the lumbar spine and knees, noting intact musculoskeletal findings in November 2020 (three years after the abnormal EMG), tender points, stable joints, and her ability to walk in March 2021. *Admin. Tr.* at 27.  Moreover, "we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records"; rather, we "expect the ALJ, as the factfinder to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  Here, the ALJ has satisfactorily considered and evaluated the record.

Nazario Vargas also argues that the "ALJ fails to explain how he considered [her] mental-health related disorders, and how these impairments would impact [her] ability to attend work on a sustained basis[.]" *Doc. 13* at 19–20.  The Commissioner counter-argues that the ALJ did, in fact, discuss Nazario Vargas's diagnoses, mental status examinations, and daily activities. *Doc. 18* at 17–18.  We agree with the Commissioner.  The ALJ lists Nazario Vargas's "mental impairments of major depressive disorder, panic disorder without agoraphobia, and attention deficit and hyperactivity disorder, along with migraine headaches." *Admin. Tr.* at 28.  The ALJ also describes the results of examinations, self-reported symptoms related to these diagnoses, treating notes, and her activities of daily

living, as well as discussing the opinion of Ramirez, who treated Nazario Vargas for her mental-health related disorders. *Id.* at 29–30.  And to account for these impairments, the ALJ included in the RFC limitations to simple, routine tasks, with only occasional interaction with the public and supervisors. *Id.* at 31.  We thus find that the ALJ has also met his obligations in explaining how he considered Nazario Vargas's mental-health related disorders.

## VI.  Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge